## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HEARTLAND ALLIANCE FOR
HUMAN NEEDS & HUMAN RIGHTS
d/b/a NATIONAL IMMIGRANT
JUSTICE CENTER
208 S. LaSalle St., Suite 1300
Chicago, IL 60604

        Plaintiff,

        v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
Washington, DC 20528

and

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT
Washington, DC 20536,

        Defendants.

Civil Action No. _____

## COMPLAINT

1.    This is an action under the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701

et seq., seeking the release of withheld records that generally concern the "Secure

Communities" immigration enforcement program.  The Heartland Alliance for

Human Needs & Human Rights d/b/a National Immigrant Justice Center ("NIJC")

filed FOIA requests with the United States Department of Homeland Security's

Office of Civil Rights and Civil Liberties ("DHS") and United States Immigration
and Customs Enforcement ("ICE"), a component of DHS, seeking records relating
to statistical and other monitoring of the "Secure Communities" program for
potential racial-profiling.  NIJC seeks declaratory, injunctive, and other appropriate
relief with respect to the unlawful withholding of these records by DHS and ICE.

## JURISDICTION AND VENUE

2.     This court has subject matter jurisdiction over this action pursuant to
28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).  In addition, this Court has
jurisdiction pursuant to the APA, 5 U.S.C. §§ 701-706.  This Court has jurisdiction
to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§
2201-2202 and Federal Rules of Civil Procedure 57 and 65.

3.     Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and
28 U.S.C. § 1391(e) as the defendants are located in the District of Columbia and
because a substantial part of the events or omissions giving rise to the claims
occurred in this district.

## THE PARTIES

4.     Plaintiff NIJC, located in Chicago, Illinois, is a nonprofit entity under
Section 501(c)(3) of the Internal Revenue code.  Dedicated to ensuring human
rights protections and access to justice for all immigrants, refugees, and asylum
seekers, NIJC provides direct legal services to and advocates for these populations

through policy reform, impact litigation, and public education.  Through its work,

NIJC advocates for individual clients as well as for broad-based systemic change.

5.      Defendant DHS is a Department of the Executive Branch of the

United States government, located in Washington, DC, and is responsible for

enforcing federal immigration laws.  DHS has possession, custody, and control

over the records sought by plaintiff.  DHS is an agency within the meaning of 5

U.S.C. § 552(f)(1).

6.      Defendant ICE is a component of DHS, located in Washington, DC,

and is responsible for enforcing federal laws governing border control, customs,

trade and immigration to promote homeland security and public safety.  ICE has

possession, custody, and control over the records sought by plaintiff.  ICE is an

agency within the meaning of 5 U.S.C. § 552(f)(1).

## NATURE OF THE ACTION

7.      Secure Communities was an immigration enforcement program

administered by ICE from 2008 to 2014; it was replaced by the Priority

Enforcement Program ("PEP") in 2015.  *See* Exhibit 1, available at

https://www.ice.gov/secure-communities.  In essence, Secure Communities

transformed every arrest in the United States into an investigation for potential

civil immigration enforcement.

8.      "When state and local law enforcement officers arrest and book someone into custody for a violation of a criminal offense, they generally fingerprint the person.  After fingerprints are taken, the state and local authorities submit the fingerprints to the FBI.  The FBI takes these fingerprints and runs them through its database of criminal records and sends the state and local authorities a record of the person's criminal history."  *See* Exhibit 2, available at https://www.ice.gov/secure-communities#tab1.

9.      "Under Secure Communities, DHS receive[d] these fingerprints from the FBI, so that ICE [could] determine if that person [was] also subject to removal (deportation)."  *Id.*  "If the person ha[d] been previously encountered and fingerprinted by an immigration official and there [was] a digitized record, then the immigration database [would] register a 'match.'  ICE then review[ed] other databases to determine whether the person [was] here illegally or [was] otherwise removable."  *Id.*

10.     "In cases where the person appear[ed] from these checks to be removable, ICE may [have] issue[d] a detainer on the person, requesting that the state or local jail facility hold the individual no more than an extra 48 hours (excluding weekends and holidays) to allow for an interview of the person. Following the interview, ICE decide[d] whether to seek the person's removal."  *Id.*

11.    "In making these decisions, ICE consider[d] a number of factors, including the person's criminal history, immigration history (such as whether the person was previously deported or ha[d] an outstanding removal order from an immigration judge), family ties, duration of stay in the U.S., significant medical issues, and other circumstances." *Id.*

12.    By mid-2011, there were mounting concerns about Secure Communities.  A Task Force on Secure Communities was created in June 2011 at the request of the Secretary of Homeland Security and was asked to consider how ICE might improve Secure Communities.  Specifically, the Task Force was asked how to address concerns that Secure Communities impacted community policing and involved the possibility of racial profiling.  The Task Force also was asked to address "how to best focus on individuals who pose a true public safety or national security threat."  *See* Exhibit 3, ICE Office of the Director, PROTECTING THE HOMELAND: ICE RESPONSE TO THE TASK FORCE ON SECURE COMMUNITIES FINDINGS AND RECOMMENDATIONS, April 27, 2012, at 2, available at http://www.dhs.gov/xlibrary/assets/hsac/ice-response-to-task-force-on-secure-communities.pdf.

13.    The Task Force recommended that "DHS must strengthen accountability mechanisms, including remedies for and prevention of civil rights and civil liberties violations."  *Id.* at 8.  In response, ICE and DHS's Office of Civil

Rights and Civil Liberties ("CRCL") "retained a leading criminologist/statistician who [] examin[ed] data for each jurisdiction where Secure Communities [was] activated, comparing data for aliens identified by the program to relevant arrest-rate data, and identif[ied] any indications of racial profiling." *Id.* at 9; *see also* Exhibit 4, SECURE COMMUNITIES: STATISTICAL MONITORING, U.S. Dep't of Homeland Security, Nov. 16, 2011, available at https://www.ice.gov/doclib/secure-communities/pdf/statisticalmonitoring.pdf. "This analysis [took] place four times per year to ensure consistent monitoring, and the assessments [were] shared quarterly with the Department of Justice (DOJ)." *Id.*

14.    Thus, "[e]ach quarter, ICE and CRCL, with the assistance of an outside expert statistician, calculate[d] statistics based on fingerprint submissions, alien identifications, and underlying demographic and crime data to identify jurisdictions whose arrest patterns appear[ed] unusual or anomalous." *See* Exhibit 4. "CRCL produce[d] a set of approximately two dozen of the highest-ranking jurisdictions for further analysis, each quarter." *Id.*

15.    "The data review process initiated with data from the third quarter of fiscal year 2011 (April 1-June 30, 2011), and [] continu[ed] on a rolling basis . . . CRCL and ICE expect[ed] to release further information on the results of the analysis on a periodic basis once investigation of apparent jurisdiction-specific problems [was] complete." *See* Exhibit 3 at 9.

16.     None of the statistical monitoring quarterly reports were released to the public by DHS, ICE, or CRCL.

17.     None of the results of investigations of apparent jurisdiction-specific problems identified from analysis of the statistical monitoring were released to the public by DHS, ICE, or CRCL.

18.     On November 20, 2014, the Secretary of Homeland Security announced a new round of reforms to the Secure Communities program and rebranded it the PEP.  *See* Exhibit 5, available at https://www.dhs.gov/sites/default/files/publications/14_1120_memo_secure_communities.pdf.  Under the new program, the Secure Communities biometric data-sharing was not reformed and continued with "collection and analysis of data, to detect . . . biased policing."  *Id.* at 3.

19.     Only through transparency can the public have confidence in the integrity of the government's immigration enforcement programs.  From the outset, biometric data-sharing in the Secure Communities program and PEP has impacted every arrest in the United States with the potential to distort policing practices across the country.  Given concerns about racial profiling in the Secure Communities program as succeeded by PEP, NIJC seeks to vindicate the public's right to information regarding what the statistical monitoring of this enforcement mechanism has uncovered.

## PLAINTIFF'S FOIA REQUESTS AND
## DEFENDANTS' FAILURE TO COMPLY WITH FOIA

### First FOIA Request

20.    By letter dated March 14, 2014, NIJC submitted a FOIA request to

DHS's CRCL ("First FOIA Request") in which it requested all records, including

electronic records, in the custody or control of CRCL related to the Statistical

Monitoring of the Secure Communities Program, including but not limited to:

(1)    all reports produced related to the Secure Communities
Statistical Monitoring, including all draft reports and reports
produced by contracted statistician(s);

(2)    all communications, including emails, with ICE and/or
contracted statistician(s) regarding Secure Communities
Statistical Monitoring;

(3)    all records related to investigations on jurisdictions where
statistical monitoring reports revealed "yellow flag" anomalies
or were otherwise chosen for further investigation;

(4)    all records related to asserting DHS Title VI jurisdiction in
relation to investigation(s) described in Request No. 3;

(5)    all communications with the DOJ Civil Rights Division
regarding investigation(s) described in Request No. 3;

(6)    all findings produced as part of investigation(s) described in
Request No. 3, including drafts of findings;

(7)    all recommendations to ICE or subject jurisdiction(s) of
investigation(s) described in Request No. 3, including drafts of
recommendations;

(8)    all revisions to the quarterly statistical review protocol for the
Secure Communities Statistical Monitoring; and

(9)    all communications with DOJ regarding the results of investigation(s) described in Request No. 3.

*See* Exhibit 6.

21.    The First FOIA Request further stated:

Please produce with the records any metadata and load files, so that the records can be accessed, searched, and displayed in a manner comparable to an CRCL user.  If codes are employed (including any numerical list of agencies, jails, or police departments), please also produce any documents in your possession explaining the codes employed, and what they signify.

*Id.*

22.    By email dated March 27, 2014, DHS acknowledged receipt of the First FOIA Request and assigned it reference number 2014-CRFO-00027.  *See* Exhibit 7.

23.    By email dated July 23, 2014, DHS asked NIJC whether it would be willing to narrow the scope of its request, and by email dated July 30, 2014, NIJC responded to DHS and declined to narrow the scope of its First FOIA Request at that time but requested that production of non-draft documents be prioritized first. *See* Exhibit 8.

24.    In its response to the First FOIA Request by letter dated October 8, 2014 ("First FOIA Request Response"), DHS identified 7,735 pages as responsive to the request.  Of those records, 2,833 pages were released in their entirety (a total of 6 documents consisting of an unusable, random assortment of raw data but no

statistical monitoring quarterly reports) while 4,902 pages were withheld in their entirety pursuant to:  FOIA Exemption 5 (inter-agency or intra-agency memoranda or letters of a deliberative or policy-making nature), FOIA Exemption 6 (personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy), and FOIA Exemption 7(C) (records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of personal privacy). *See* Exhibit 9.  In the format in which the records were released, however, they cannot be accessed, searched, and displayed by NIJC in a manner comparable to a CRCL user, as specifically requested in the First FOIA Request.

25.     NIJC filed an administrative appeal in connection with the First FOIA Request Response on November 19, 2014 ("First FOIA Appeal").  In particular, NIJC appealed the withholding of records (or portions thereof) based on:

- failure to account for all responsive pages identified in initial searching by the agency;

- a generic assertion of FOIA Exemptions without any meaningful explanation;

- failure to produce segregable portions of otherwise withheld records;

- production of responsive records (*e.g.,* Excel spreadsheets) in non-native format and in a format that cannot be accessed, searched, and displayed in a manner comparable to a CRCL user; and

- incomplete searches for responsive records.

*See* Exhibit 10.

26.     By letter dated July 7, 2015, in response to the First FOIA Appeal which was assigned appeal reference number 2015-HQAP-00020, the First FOIA Request was remanded back to DHS's CRCL because on appeal the agency was "unable to determine if the [FOIA] exemptions were properly applied." *See* Exhibit 11.

27.     NIJC has not received any further response determination in connection with the First FOIA Request.

28.     For the purposes of the First FOIA Request, the newly rebranded PEP (on November 20, 2014, eight months subsequent to the First FOIA Request) became the alter ego of the Secure Communities program.  Thus, any reference to the Secure Communities program in the First FOIA Request necessarily includes the PEP.

## Second FOIA Request

29.     By letter dated March 14, 2014, NIJC submitted a FOIA request to ICE ("Second FOIA Request") in which it requested all records, including electronic records, in the custody or control of ICE related to the Statistical Monitoring of the Secure Communities Program, including but not limited to:

> (1)     all reports produced related to the Secure Communities Statistical Monitoring, including all draft reports and reports produced by contracted statistician(s);

(2)     all communications, including emails, with CRCL and/or contracted statistician(s) regarding Secure Communities Statistical Monitoring;

(3)     all records related to investigations on jurisdictions where statistical monitoring reports revealed "yellow flag" anomalies or were otherwise chosen for further investigation;

(4)     all records related to asserting DHS Title VI jurisdiction in relation to investigation(s) described in Request No. 3;

(5)     all communications with the DOJ Civil Rights Division regarding investigation(s) described in Request No. 3;

(6)     all findings produced as part of investigation(s) described in Request No. 3, including drafts of findings;

(7)     all recommendations received by ICE or issued to subject jurisdiction(s) of investigation(s) described in Request No. 3, including any drafts of recommendations to subject jurisdiction(s);

(8)     all revisions to the quarterly statistical review protocol for the Secure Communities Statistical Monitoring; and

(9)     all communications with DOJ regarding the results of investigation(s) described in Request No. 3.

*See* Exhibit 12.

30.     The Second FOIA Request further stated:

Please produce with the records any metadata and load files, so that the records can be accessed, searched, and displayed in a manner comparable to an CRCL user.  If codes are employed (including any numerical list of agencies, jails, or police departments), please also produce any documents in your possession explaining the codes employed, and what they signify.

*Id.*

31.    By letter dated March 25, 2014, ICE and DHS acknowledged the

Second FOIA Request and assigned it reference number 2014FOIA12739.  *See*

Exhibit 13.

32.    Having received no response to the Second FOIA Request, NIJC filed

an administrative appeal on May 29, 2015 ("Second FOIA Appeal").[1]  In

particular, NIJC appealed the constructive denial of the Second FOIA Request in

view of ICE's failure to provide a response determination within the statutory time

limits.  *See* Exhibit 14.

33.    By letter dated June 2, 2015, ICE and DHS acknowledged the Second

FOIA Appeal and assigned it number 2015-ICAP-00411.[2]  *See* Exhibit 15.

34.    NIJC has not received any further response to the Second FOIA

Appeal nor any response determination in connection with the Second FOIA

Request.

35.    For the purposes of the Second FOIA Request, the newly rebranded

PEP (on November 20, 2014, eight months subsequent to the Second FOIA

Request) became the alter ego of the Secure Communities program.  Thus, any

reference to the Secure Communities program in the Second FOIA Request

necessarily includes the PEP.

---

[1] ICE incorrectly cited a date of June 1, 2015.

[2] ICE incorrectly cited to FOIA request reference number 2015-ICFO-00080
in the June 2, 2015 letter.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

36.     NIJC has exhausted any and all administrative remedies with respect to DHS and ICE in connection with the First FOIA Request and the Second FOIA Request.

## FIRST CAUSE OF ACTION:
### Violation of the Freedom of Information Act for Failure to Disclose Agency Records With Respect to the First FOIA Request

37.     NIJC repeats and re-alleges paragraphs 1-36 above.

38.     NIJC has a legal right under FOIA to obtain the agency records requested from defendant DHS in the First FOIA Request, and no legal basis exists for defendant's failure to make available the requested records.

39.     With respect to the First FOIA Request, Defendant's failure to make reasonable efforts to search for responsive records, wrongful withholding of agency records, and failure to produce responsive records in the requested format, violates FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(B), & 552(a)(3)(C), as well as the DHS regulations promulgated thereunder.

40.     NIJC is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records.

## SECOND CAUSE OF ACTION:
### Violation of the Freedom of Information Act for Failure to
### Disclose Agency Records With Respect to the Second FOIA Request

41.     NIJC repeats and re-alleges paragraphs 1-40 above.

42.     NIJC has a legal right under FOIA to obtain the agency records
requested from defendants ICE and DHS in the Second FOIA Request, and no
legal basis exists for defendants' failure to make available the requested records.

43.     With respect to the Second FOIA Request, Defendants' failure to
make reasonable efforts to search for responsive records, and wrongful
withholding of agency records, violates FOIA, 5 U.S.C. §§ 552(a)(3)(A) &
552(a)(3)(C), as well as the ICE and DHS regulations promulgated thereunder.

44.     NIJC is entitled to declaratory and injunctive relief with respect to the
release and disclosure of the requested records.

## THIRD CAUSE OF ACTION:
### Violation of the Administrative Procedure Act for Failure to Timely Respond
### to Request for Agency Records With Respect to the First FOIA Request

45.     NIJC repeats and re-alleges paragraphs 1-44 above.

46.     The failure of defendant DHS to timely respond to NIJC's First FOIA
Request for agency records, and defendants' withholding of agency records,
constitutes agency action unlawfully withheld and unreasonably delayed, in
violation of the APA, 5 U.S.C. §§ 701-06.  The failure of defendant DHS to timely
respond and its withholdings each are arbitrary, capricious, an abuse of discretion,

not in accordance with law and without observance of procedure required by law,
all in violation of the APA.

47.    NIJC is entitled to declaratory and injunctive relief with respect to the
release and disclosure of the requested records with respect to the First FOIA
Request.

## FOURTH CAUSE OF ACTION:
**Violation of the Administrative Procedure Act for Failure to Timely Respond
to Request for Agency Records With Respect to the Second FOIA Request**

48.    NIJC repeats and re-alleges paragraphs 1-47 above.

49.    The failure of defendants ICE and DHS to timely respond to NIJC's
Second FOIA Request for agency records, and defendants' withholding of agency
records, constitutes agency action unlawfully withheld and unreasonably delayed,
in violation of the APA, 5 U.S.C. §§ 701-06.  The failure of defendants ICE and
DHS to timely respond and their withholdings each are arbitrary, capricious, an
abuse of discretion, not in accordance with law and without observance of
procedure required by law, all in violation of the APA.

50.    NIJC is entitled to declaratory and injunctive relief with respect to the
release and disclosure of the requested records with respect to the Second FOIA
Request.

## REQUESTS FOR RELIEF

WHEREFORE, NIJC requests that judgment be entered in its favor and against defendants, and that:

a) defendants and any of defendants' agents or other persons, departments, or components acting for, with, by, through or under them be ordered to conduct a reasonable search for records responsive to NIJC's requests under the Freedom of Information Act;

b) defendants and any of defendants' agents or other persons, departments, or components acting for, with, by, through or under them be enjoined and restrained from continuing to withhold records relevant to NIJC's requests under the Freedom of Information Act and in violation of the APA;

c) the Court declare that the requested records are not exempt from disclosure under the Freedom of Information Act and order defendants to disclose the requested records in their entireties and make copies available to NIJC;

d) the Court enter a judgment awarding NIJC reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

e) the Court award all other such relief to NIJC as this Court deems just, proper and equitable.

Dated:  February 8, 2016                Respectfully submitted,

                                        /s/ Seth A. Watkins_____
                                        Seth A. Watkins (D.C. Bar # 467470)
                                              Email:  watkins@adduci.com
                                        ADDUCI, MASTRIANI & SCHAUMBERG, LLP
                                        1133 Connecticut Avenue, NW
                                        Washington, DC 20036
                                        Telephone: (202) 407-8647
                                        Facsimile: (202) 466-2006

                                        Of Counsel:
                                        Mark M. Fleming*
                                              Email:  MFleming@heartlandalliance.org
                                        HEARTLAND ALLIANCE FOR
                                        HUMAN NEEDS & HUMAN RIGHTS
                                        D/B/A NATIONAL IMMIGRANT JUSTICE CENTER
                                        208 S. LaSalle St., Suite 1300
                                        Chicago, IL 60604
                                        Telephone: (312) 660-1628
                                        Facsimile: (312) 660-1505

                                        *moving for admission *pro hac vice*

                                        *Attorneys for Plaintiff*
                                        *Heartland Alliance for Human*
                                        *Needs & Human Rights*
                                        *d/b/a National Immigrant Justice Center*