# EXHIBIT 5

 Official Website of the Department of Homeland Security



Report Crimes: Email or Call 1-866-DHS-2-ICE

# Secure Communities

ERO

| History | Archived Information |

> This information is archived as a result of Secure Communities being replaced by Priority Enforcement Program (PEP) in July 2015. Learn more about PEP →

- Secure Communities: Get the Facts
- Secure Communities Briefings for Local and State Law Enforcement
- Frequently Asked Questions

## Secure Communities: Get the Facts

**FACT: ICE is focused on smart, effective immigration enforcement that prioritizes efforts to identify and remove criminal aliens and others who pose a potential threat to public safety.**
Under this administration, U.S. Immigration and Customs Enforcement (ICE) has prioritized the removal of aliens who are in the country illegally who have also broken criminal laws.

One important tool that ICE relies upon to advance this priority is Secure Communities, which uses an already-existing federal information-sharing partnership to identify and remove aliens who pose a threat to public safety. Through Aug. 31, 2012, more than 166,000 immigrants convicted of crimes, were removed from the United States after identification through Secure Communities. Of the more than 166,000, more than 61,000 immigrants were convicted of aggravated felony (level 1) offenses, including murder, rape and the sexual abuse of children.

The National Sheriffs' Association and Major County Sheriffs' Association have issued formal statements in support of Secure Communities.

**FACT: Under Secure Communities, state and local law enforcement officers continue enforcing their state or local law in the same manner in which they always have.**
Under Secure Communities, state and local law enforcement officers are not deputized, do not enforce immigration law, and are not tasked with any additional responsibilities. In fact, state and local law enforcement officers are asked to enforce the law in exactly the same manner as they did before the federal information partnership used by Secure Communities was activated in their jurisdiction. With Secure Communities, only federal officers make immigration enforcement decisions, and they do so only after a completely independent decision by state and local law enforcement to arrest an individual for a criminal violation of state law separate and apart from any violations of immigration law.

**FACT: Secure Communities was designed to reduce the potential for racial profiling.**
Under Secure Communities, the fingerprints of every single individual arrested and booked into custody, including U.S. citizens and legal permanent residents, are checked against immigration records – reducing the risk of discrimination or racial profiling. ICE and the DHS Office for Civil Rights and Civil Liberties (CRCL) are implementing additional procedures to monitor state and local conduct and protect the program from potential abuses. These safeguards include strengthening protections for victims of abuse or other crimes; a formal complaint process for those who feel they have been the targets of ethnic discrimination; an investigative process involving CRCL with referral to the Department of Justice; and analysis by a statistician to identify any data irregularities that could indicate misconduct in particular jurisdictions so that we can immediately initiate corrective

actions.

**FACT: Secure Communities is working to protect witnesses and victims of crimes.**
As the federal law enforcement agency charged with enforcing U.S. immigration laws, ICE works closely with local law enforcement agencies to ensure victims and witnesses of crimes we deal with are properly identified. The vast majority of jurisdictions do not arrest victims or witnesses at the scene of a domestic altercation. At the direction of Secretary of Homeland Security Janet Napolitano, ICE, in consultation with CRCL, has issued a policy addressing possible scenarios where a victim or witness may be identified in Secure Communities, to ensure appropriate discretion is exercised.

**FACT: State and local jurisdictions cannot opt out of Secure Communities.**
Unfortunately, some of ICE's past public statements led to confusion about whether state and local jurisdictions can opt out of the program.

Secure Communities imposes no new or additional requirements on state and local law enforcement. When state and local authorities arrest and book someone into jail for a criminal offense, they routinely submit fingerprints to the Federal Bureau of Investigation (FBI). The FBI then automatically shares these fingerprints with ICE to check against immigration databases. If the fingerprint check reveals that an individual is not a U.S. citizen, or is removable from the United States because of their criminal history, ICE takes appropriate enforcement action – prioritizing the removal of individuals who present the most significant threats to public safety as determined by the severity of their crime, their criminal history and other factors.

The federal government, not the state or local law enforcement agency, determines what immigration enforcement action, if any, is appropriate. Only federal officers make immigration decisions, and they do so only after an individual is arrested for a criminal violation of state law, separate and apart from any violations of immigration law.

A jurisdiction may choose not to receive the identifications that result from processing the fingerprints through DHS's biometric system that are provided to the local ICE field office. In the past, this option has been mischaracterized as a mechanism for a jurisdiction to opt out of the program. In fact, a jurisdiction's decision not to receive this information directly does not affect whether the local ICE field office in that jurisdiction will or will not take enforcement action based on those results.

# Secure Communities Briefings for Local and State Law Enforcement

Concerns about the civil rights and civil liberties of individuals in communities where there is significant immigration enforcement activity are not unique to Secure Communities. The Office for Civil Rights and Civil Liberties (CRCL) and U.S. Immigration and Customs Enforcement (ICE) are creating a series of training/awareness briefings designed primarily for use by front line state and local law enforcement agency personnel during daily muster/roll call briefings. The videos and other tools will address eight categories of civil rights and civil liberties issues and topics of importance.

**Project Goals:**

- To provide actionable information to state and local law enforcement about the civil rights and civil liberties issues that may arise when ICE begins using a federal information sharing capability through Secure Communities in their jurisdictions.

- To increase the transparency of the Department's active commitment to protecting the civil rights and civil liberties of all persons affected by DHS activities and programs.

This series of training/briefing materials is designed to be presented at daily briefings, as well as through in-service training. Each module contains a short video, downloadable job aids designed for line officers, and material for law enforcement leadership, such as planning tools and web-based resources. The modules are designed to be presented as a series, but any combination may be used to suit the needs of

your jurisdiction.

The materials are designed for two distinct audiences – front line officers and law enforcement leadership (listed as Commander's Packets).

These videos are the result of a collaborative effort of the Department of Homeland Security's Office for Civil Rights and Civil Liberties and U.S. Immigration and Customs Enforcement.

Expand All  Collapse All

| Introduction to Secure Communities: What Law Enforcement Needs to Know | + |
| How to Respond to an Immigration Detainer | + |
| Consular Notification: Your Role When Detaining Foreign Nationals | + |
| Unlawful Retaliation by Private Actors | + |
| Community Outreach: Explaining Secure Communities to Your Community | + |
| Assisting Certain Crime Victims and Witnesses: Immigration Enforcement Consequences and Protections | + |
| Speaking Their Language: Working with Individuals with Limited English Proficiency | + |
| Avoiding Racial Profiling | + |

## Supporting Documents

- Civil Rights and Civil Liberties Complaint Form in English, Spanish and seven other languages
- Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency (PDF | 433 KB)
- ICE's Civil Immigration Enforcement Priorities Memorandum (March 2, 2011) (PDF | 385 KB)
- ICE's Response to the Task Force on Secure Communities Findings and Recommendations (PDF | 944 KB)
- Prosecutorial Discretion Memo: Certain Victims, Witnesses and Plaintiffs (PDF | 3.5 MB)

# Frequently Asked Questions

### What is Secure Communities?

When allocating its enforcement resources, U.S. Immigration and Customs Enforcement (ICE) prioritizes the expenditure of those resources on cases involving public safety and national security, the integrity of the immigration system, and border security. As a result, ICE focuses on the removal of criminal aliens and repeat immigration violators, as well as on the enhancement of border security through the removal of those who recently unlawfully entered the United States. Secure Communities is a simple and common sense tool that helps ICE effectuate these priorities. It utilizes an already-existing federal information-sharing partnership between ICE and the Federal Bureau of Investigation (FBI) and helps to identify removable aliens who have been arrested and booked for violations of criminal law, without imposing new or additional requirements on state and local law enforcement.

For decades, local jurisdictions have shared fingerprints of individuals who are arrested or booked into custody with the FBI to determine if they have a criminal record. Under Secure Communities, the FBI, as mandated by statute, automatically sends these fingerprints to DHS to check against its immigration databases. If these checks reveal that an individual may be unlawfully present in the United States or otherwise removable due to a criminal conviction, ICE determines what, if any, enforcement action to take – prioritizing the removal of those individuals who present the most significant threats to public safety as determined by the severity of their crime, their criminal history, and other factors, as well as those who have repeatedly violated immigration laws.

Secure Communities imposes no new or additional requirements on state and local law enforcement. The federal government, not the state or local law enforcement agency, determines what immigration enforcement action, if any, is appropriate.

## How does Secure Communities work?

When state and local law enforcement officers arrest and book someone into custody for a violation of a criminal offense, they generally fingerprint the person. After fingerprints are taken, the state and local authorities submit the fingerprints to the FBI. The FBI takes these fingerprints and runs them through its database of criminal records and sends the state and local authorities a record of the person's criminal history.

Under Secure Communities, DHS receives these fingerprints from the FBI, so that ICE can determine if that person is also subject to removal (deportation). This approach, whereby the fingerprints that are sent to the FBI are then shared with DHS, fulfills a 2002 Congressional mandate for federal law enforcement agencies to share information that is relevant to determine the admissibility or deportability of an alien. See 8 U.S.C. § 1722(a)(2).

If the person has been previously encountered and fingerprinted by an immigration official and there is a digitized record, then the immigration database will register a "match." ICE then reviews other databases to determine whether the person is here illegally or is otherwise removable.

In cases where the person appears from these checks to be removable, ICE may issue a detainer on the person, requesting that the state or local jail facility hold the individual no more than an extra 48 hours (excluding weekends and holidays) to allow for an interview of the person. Following the interview, ICE decides whether to seek the person's removal.

In making these decisions, ICE considers a number of factors, including the person's criminal history, immigration history (such as whether the person was previously deported or has an outstanding removal order from an immigration judge), family ties, duration of stay in the U.S., significant medical issues, and other circumstances.

## What are states required to do under Secure Communities?

In jurisdictions where Secure Communities has been activated, Secure Communities imposes no new or additional requirements on state or local law enforcement. In fact, following the activation of Secure Communities in a jurisdiction, it is important that law enforcement agencies enforce the criminal law in exactly the same manner as they did before Secure Communities was activated.

Under Secure Communities, state and local law enforcement officers are not deputized, do not enforce immigration law, and are not tasked with any additional responsibilities. In all jurisdictions except the few in which there is an agreement with the federal government in place under Section 287(g) of the Immigration and Nationality Act, only federal DHS officers make immigration enforcement decisions, and they do so only after a completely independent decision by state and local law enforcement to arrest and book an individual for a criminal violation of state law separate and apart from any violations of immigration law. Additionally, it is DHS and the FBI, not state or local governments, that perform the information sharing that is the cornerstone of Secure Communities.

## What reforms of Secure Communities have been implemented?

On June 17, 2011, ICE announced key improvements to Secure Communities. Secure Communities has proven to be a critical tool for carrying out ICE's enforcement priorities. To continue to improve Secure Communities, DHS and ICE are committed to addressing concerns that have been raised about its operation, including through the following reforms:

- **Advisory Committee & Minor Traffic Offenses:** ICE created an advisory task force to advise the Director of ICE on ways to improve Secure Communities, including making recommendations on how to best focus on individuals who pose a true public safety or national security threat or meet other enforcement priorities. This panel was composed of chiefs of police, sheriffs, state and local prosecutors, ICE agents from the field, immigration advocates, and leading academics. View the full list of committee members. This advisory group provided recommendations on how ICE can adjust Secure Communities to mitigate potential impacts on

   community policing practices, including how to implement policies related to the detention and
   removal of individuals charged with, but not convicted of, minor traffic offenses who have no
   other criminal history or egregious immigration violations. ICE issued its response to the
   advisory group's recommendations, which explained the various steps it has taken to address
   the concerns raised by the advisory group.

- **Prosecutorial Discretion:** ICE Director Morton has issued a memo providing guidance for ICE
  law enforcement personnel and attorneys regarding their authority to exercise discretion when
  appropriate – authority designed to help ICE better focus on meeting the priorities of both the
  agency and Secure Communities to use limited resources to target criminals, those that put
  public safety at risk, and other enforcement priorities. The memo clarifies that the exercise of
  discretion is inappropriate in cases involving threats to public safety, national security and other
  agency priorities.

- **Training for States:** ICE and the DHS Office for Civil Rights and Civil Liberties (CRCL) have
  developed a new training program for state and local law enforcement agencies to provide more
  information for state and local law enforcement about how Secure Communities works and how
  it relates to laws governing civil rights. Four video briefings, with supporting materials, have been
  released already, with more to follow throughout calendar year 2012.

- **Protecting Victims & Witnesses of Crimes:** At the direction of Secretary of Homeland Security
  Janet Napolitano, ICE, in consultation with CRCL, has developed a policy specifically to protect
  victims of domestic violence and other crimes and to ensure that these crimes continue to be
  reported and prosecuted. This policy directs all ICE officers and attorneys to exercise
  appropriate discretion to ensure that victims of and witnesses to crimes are not penalized by
  removal. ICE is also working to develop additional tools that will help identify people who may be
  victims, witnesses, or members of a vulnerable class so officers can exercise appropriate
  discretion.

- **Detainer Form:** ICE has revised the detainer form that it sends to local jurisdictions to request
  that an alien be held for ICE to interview, to emphasize the longstanding guidance that state and
  local authorities are not to detain an individual for more than 48 hours (excluding weekends and
  holidays). Implemented in December 2011,the form also requires local law enforcement to
  provide arrestees with a copy, which includes an explanation of how to make a complaint in six
  languages and a number to call if the arrestee believes his or her civil rights have been violated
  in a manner connected to immigration enforcement.

- **Civil Rights Complaints:** ICE and CRCL have created a complaint system whereby individuals
  or organizations who believe civil rights violations connected to Secure Communities have
  occurred can file a complaint. For example, CRCL will investigate complaints of racial or ethnic
  discrimination by policing jurisdictions for which Secure Communities has been activated, and
  DHS will take steps to ensure that bias or other abuses do not affect immigration enforcement.

- **Data Collection and Monitoring:** ICE and CRCL have created an ongoing quarterly statistical
  review of the Secure Communities to examine data for each jurisdiction where Secure
  Communities is activated to identify effectiveness and any indications of potentially improper
  use. The data analysis is underway and the statistical methodology is described in detail in a
  white paper posted to the Secure Communities web site.

## What are the benefits of Secure Communities?

Along with border enforcement, ICE's top civil enforcement priorities are the identification and
removal of criminal aliens, other aliens who pose a threat to public safety, and aliens who have
repeatedly violated our nation's immigration laws. In ICE's experience, the most effective way to
identify such aliens is by checking the immigration status of individuals arrested and booked into
custody for violations of criminal laws. Secure Communities allows ICE to efficiently identify these
high priority cases by taking advantage of state and local law enforcement agencies' long-standing
practice of voluntarily submitting fingerprint information to the FBI for criminal background checks.

Under Secure Communities, DHS receives this information from the FBI, determines the individual's
immigration status, and then makes a decision about what immigration enforcement action, if any,
should be taken. By focusing on individuals who have been arrested and booked into custody for
alleged violations of criminal laws, Secure Communities has proven to be one of ICE's most
important tools for identifying and removing criminal aliens as well as repeat immigration violators.

However, that is not the only benefit of Secure Communities. Other benefits include:

- Secure Communities is designed to ensure that the responsibility of immigration enforcement remains with federal officials. It does not authorize or permit state or local law enforcement to enforce federal immigration law.

- Secure Communities does not require or permit any change to law enforcement agencies' customary booking process.

- Finally, information is shared in near real time and is based on biometrics, in this case fingerprints. Fingerprints are accurate, reliable, and virtually impossible to forge.

The National Sheriffs' Association, Major County Sheriffs' Association, New York Sheriffs' Association and the New York Association of Chiefs of Police have all issued formal statements in support of Secure Communities.

### When is ICE planning to activate Secure Communities nationwide?

ICE continues to work with its law enforcement partners across the country to responsibly and effectively implement this federal information sharing capability and plans to reach complete nationwide activation during FY 2013. When Secure Communities is activated in a jurisdiction, the FBI automatically sends the fingerprints it receives from that jurisdiction to DHS to check against DHS's immigration databases. If these checks reveal that an individual is unlawfully present in the United States or otherwise removable due to a criminal conviction, ICE determines what, if any, enforcement action to take.

### How does ICE define "criminal aliens"?

Criminal aliens are immigrants who have been convicted of a crime by a court of law. This conviction may occur in the United States or overseas, provided that the overseas conviction is one that is recognized in the United States.

### Why are immigration violators who have not been convicted of a crime being identified by Secure Communities, and why are some of them being removed from the United States?

Immigration violators who have not been convicted of a crime are being identified by Secure Communities because Secure Communities identifies all people who have been arrested and booked into custody and have had some prior contact with immigration officials—including people who, for example, have received an immigrant benefit as well as those who were previously apprehended while attempting to cross the border or applied for a now-expired visa. Some of the individuals without criminal convictions who are identified through Secure Communities are being removed because, although they have not been convicted of a crime, they still fall within ICE's enforcement priorities—for example by repeatedly violating U.S. immigration law or because they are fugitives from immigration court. Where an individual who is awaiting trial on certain criminal offenses falls within ICE's enforcement priorities and already has an outstanding final order of removal, ICE may, in some circumstances, decide to remove that individual before the criminal trial.

### Can a state or local law enforcement agency choose not to have fingerprints it submits to the FBI checked against DHS' system?

This question has been asked in many contexts, and it is important to clarify that the information-sharing partnership between DHS and the FBI that is the cornerstone of Secure Communities is mandated by federal law, which means that state and local jurisdictions cannot prohibit information-sharing between agencies in this respect. Secure Communities is mandatory in that, once the information-sharing capability is activated for a jurisdiction, the fingerprints that state and local law enforcement voluntarily submit to the FBI to be checked against the DOJ's biometric identification system for criminal history records are automatically sent to DHS's biometric system to check against its immigration and law enforcement records. The United States government has determined that a jurisdiction cannot choose to have the fingerprints it submits to the federal government processed *only* for criminal history checks. Further, jurisdictions cannot ask that the identifications that result from DHS's processing of the fingerprints not be shared with local ICE field offices in that jurisdiction. It is ICE, and not the state or local law enforcement agency, that determines what immigration enforcement action, if any, is appropriate.

> A state or local jurisdiction may, however, choose not to receive the information about identifications that result from processing fingerprints through DHS's databases that is provided to the local ICE field office. A jurisdiction's decision not to receive this information does not affect whether the local ICE field office in that jurisdiction will or will not take enforcement action based on those results.

## What protocols are in place to monitor State and local conduct to guard against profiling?

ICE will not allow Secure Communities to turn into a conduit for any civil rights abuses. ICE and CRCL have recently improved safeguards – training, complaint processes, and data collection and monitoring – to further protect Secure Communities from officers or jurisdictions that may engage in racial or ethnic profiling, or would otherwise affect ICE's prioritization through improper policing practices. As described in part above, several initiatives to achieve these goals are underway:

- In all ICE detention facilities, ICE prominently advertises a 24-hour phone number for those who feel they have been the targets of racial or ethnic profiling and ensures that complaints, including those about Secure Communities, are transmitted to CRCL, the Department of Justice, or other appropriate office.

- In order to identify jurisdictions that *may* be making improper arrests that could result in identification of aliens through Secure Communities, ICE and CRCL have retained a leading statistician who is examining data for each jurisdiction where Secure Communities is deployed. Statistical outliers will be subject to in-depth analysis. This analysis will take place four times per year to ensure consistent monitoring, and DHS and ICE will take appropriate steps to resolve any issues.

- To prevent and address possible abuses of Secure Communities, ICE and CRCL are working together to develop new outreach and awareness materials for state and local law enforcement agencies in jurisdictions where Secure Communities is deployed.

- ICE and CRCL have created a complaint system whereby individuals or organizations who believe civil rights violations connected to Secure Communities have occurred can file a complaint. For example, CRCL will investigate complaints of ethnic discrimination by policing jurisdictions for which Secure Communities has been deployed, and DHS will take steps to ensure that bias or other abuses do not affect immigration enforcement.

- ICE has revised the immigration detainer form to ensure that any alien who is detained receives a copy. The revised form includes information on how to file a complaint in six languages.

- ICE, in consultation with CRCL, has developed a new policy specifically to protect victims of domestic violence and other crimes and to ensure that these crimes continue to be reported and prosecuted. This policy directs ICE officers and attorneys to exercise appropriate discretion to ensure immediate victims of and witnesses to crimes are not penalized by removal. ICE is also working to develop additional tools that will help identify people who may be victims, witnesses, or members of a vulnerable class so officers can exercise appropriate discretion.

DHS and ICE take allegations of racial profiling and other complaints relating to civil rights and civil liberties violations very seriously. Formal allegations are referred to CRCL, which is tasked with guarding against violations in DHS programs. ICE fully supports all CRCL investigations, including by taking action to ensure witnesses and complainants are able to remain in the United States.

> ### In the past, ICE has entered into agreements with states before activating Secure Communities. Is this step required to operate Secure Communities in a state?
>
> No, a memorandum of agreement (MOA) is not required to activate Secure Communities for a state. Secure Communities relies on an already-existing federal information-sharing program, consisting of the sharing of biometric data between two federal law enforcement agencies—DHS and the FBI— and is designed to advance the federal government's responsibility to enforce immigration laws. Once a state or local law enforcement agency voluntarily submits fingerprint data to the federal government, no agreement with the state is legally necessary for one part of the federal government to share it with another part. Accordingly, no state act or permission is required to allow ICE to activate or operate Secure Communities for a state or local jurisdiction, and an MOA with a state is not required to activate Secure Communities for jurisdictions within that state.

## Will the Secure Communities MOAs that have already been executed remain in effect? What is the effect of a termination of a Secure Communities MOA?

Because ICE has determined that an MOA with a state is not necessary to activate or operate Secure Communities for jurisdictions within that state, ICE has decided to terminate all existing MOAs. For states that already terminated their MOAs, ICE will honor the state's desire to no longer receive information regarding the immigration status of an individual whose fingerprint information is submitted to the federal government via the FBI, and will cease providing the immigration status information generated through Secure Communities to the state.

The termination of the MOAs will have no effect on the operation of Secure Communities for any state. ICE will continue to operate Secure Communities for jurisdictions where it is already deployed and, over the next two years, will activate it for the remaining jurisdictions. ICE will fully deploy Secure Communities for all jurisdictions during FY 2013. Prior to the activation of new jurisdictions within a state, ICE will provide advance notice to both the state and local governments.