UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HEARTLAND ALLIANCE FOR HUMAN NEEDS & HUMAN RIGHTS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 16-211 (RMC) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

The National Immigrant Justice Center (NIJC) brings this Freedom of Information Act (FOIA) lawsuit to challenge the adequacy of responses to its FOIA requests from the Department of Homeland Security (DHS) and its constituent agency, Immigration and Customs Enforcement (ICE). DHS and NIJC filed cross-motions for partial summary judgment. The Court will deny DHS's motion for partial summary judgment because it has not demonstrated that an adequate search was conducted. It will grant in part NIJC's motion for summary judgment. DHS will be directed to search for and produce all data underlying the draft statistical reports regarding Secure Communities and the Priority Enforcement Program.

**I. BACKGROUND**

NIJC is a nonprofit entity, under which the Heartland Alliance for Human Needs and Human Rights does business. It is "[d]edicated to ensuring human rights protections and access to justice for all immigrants, refugees, and asylum seekers." Compl. [Dkt. 1] ¶ 4. "Secure Communities was an immigration enforcement program administered by ICE from 2008 to 2014," *id.* ¶ 7, and reinstituted in 2017. *See* Exec. Order No. 13,767, 82 Fed. Reg. 8,793 (Jan.

1

25, 2017). Secure Communities allowed fingerprints collected by police, which were provided "to the FBI for checks against various criminal justice databases" to also be turned over to DHS to determine "which fingerprinted arrestees may be removable aliens." Ex. 6, Compl. (DHS FOIA Request) [Dkt. 1-11] at 8.[1]

As part of its mission, NIJC submitted requests under the Freedom of Information Act, 5 U.S.C. § 552 (2012), on March 14, 2014 to DHS and ICE regarding the Secure Communities program administered by ICE. *See* DHS FOIA Request; Ex. 12, Compl. (ICE FOIA Request) [Dkt. 1-17]. Both FOIA requests asked for the following:

> all records, including electronic records, in the custody or control of [DHS's Office for Civil Rights and Civil Liberties (CRCL)] related to the Statistical Monitoring of the Secure Communities Program, including but not limited to:
>
> (1) all reports produced related to the Secure Communities Statistical Monitoring, including all draft reports and reports produced by contracted statistician(s);
>
> (2) all communications, including emails, with ICE and/or contracted statistician(s) regarding Secure Communities Statistical Monitoring;
>
> (3) all records related to investigations on jurisdictions where statistical monitoring reports revealed "yellow flag" anomalies or were otherwise chosen for further investigation;
>
> (4) all records related to asserting DHS Title VI jurisdiction in relation to investigation(s) described in Request No. 3;
>
> (5) all communications with the DOJ Civil Rights Division regarding investigation(s) described in Request No. 3;
>
> (6) all findings produced as part of investigation(s) described in Request No. 3, including drafts of findings;

---

[1] All page citations to record documents refer to the Electronic Case Filing (ECF) page number.

> (7) all recommendations to ICE or subject jurisdiction(s) of investigation(s) described in Request No. 3, including drafts of recommendations;
>
> (8) all revisions to the quarterly statistical review protocol for the Secure Communities Statistical Monitoring; and
>
> (9) all communications with DOJ regarding the results of investigation(s) described in Request No. 3.

Compl. ¶ 20. DHS assigned the FOIA Request reference number 2014-CRFO-00027, *id*. ¶ 22, and identified 7,735 responsive records, releasing 2,833 records in their entirety and withholding the remaining 4,902 records pursuant to various FOIA exemptions. *Id*. ¶ 24. NIJC filed an administrative appeal concerning the withheld documents in November 2014. *Id*. ¶ 25.

ICE assigned the FOIA request reference number 2014FOIA12739, *id*. ¶ 31, and to date no records have been identified or produced by ICE. NIJC filed an administrative appeal of the ICE failure to respond to the FOIA Request in May 2015. *Id*. ¶ 32. On February 8, 2016, NIJC filed the Complaint in this case challenging the adequacy of the agencies' response to the FOIA requests. *See id*. NIJC also submitted additional FOIA Requests to DHS and ICE on November 4, 2016 requesting the same types of records for the Priority Enforcement Program (PEP), a replacement program for Secure Communities, which was in place from 2014 to 2016. *See* Pl.'s Cross-Mot. for Partial Summ. J. (NIJC Mot.) [Dkt. 32] at 7 n.1.

The Court held a number of telephone conferences with the parties in October and November 2016 to determine the status of the responses to NIJC's FOIA Requests. NIJC indicated that, if DHS and ICE produced the quarterly statistical reports regarding Secure Communities and PEP, it might be willing to forego the remaining categories of records listed in the original FOIA Requests. The Court, therefore, ordered Defendants to locate and produce all

statistical monitoring reports and underlying data, or indicate in a *Vaughn* Index[2] the grounds for withholding each record. *See* Order [Dkt. 20]. Production of other categories of requested documents was suspended while Defendants focused on the statistical reports. *See id*. DHS located 2,519 responsive records that fit in the category of statistical monitoring reports, and withheld 1,190 records in their entirety, providing a *Vaughn* Index to NIJC. Declaration of James V.M.L. Holzer (Holzer Decl.) [Dkt. 31-2] ¶ 4. After continued review, DHS withheld another 1,258 records in full, produced 65 redacted records, and provided NIJC with four additional *Vaughn* Indexes explaining the withholdings. *Id*. ¶ 5. ICE located no records relevant to the narrowed request.

DHS moved for partial summary judgment on the production of the statistical reports on April 28, 2017, asserting that all records were properly withheld or redacted pursuant to FOIA Exemption 5. *See* Mot. for Partial Summ. J. (DHS Mot.) [Dkt. 31]. NIJC opposed and filed a cross-motion for summary judgment on May 12, 2017, challenging DHS's segregability analysis and requesting production of tables with data and metrics included in the draft statistical reports, as well as the remaining underlying data. *See* NIJC Mot. DHS filed a combined opposition and reply on May 30, 2017. *See* Defs' Combined Reply in Supp. of its Mot. for Partial Summ. J. & Opp'n to Pl.'s Cross-Mot. for Summ. J. (DHS Opp'n) [Dkt. 34]. NIJC replied on June 14, 2017. *See* Reply Mem. in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. (NIJC Reply) [Dkt. 36]. The matter is ripe for decision.

---

[2] *See Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each withheld record, or portion thereof, with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification).

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is the typical vehicle to resolve an action brought under FOIA. *See McLaughlin v. DOJ*, 530 F. Supp. 2d 210, 212 (D.D.C. 2008). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 248.

### B. FOIA

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exceptions. *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). In a FOIA case, a court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by

5

evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

A defending agency in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010), *aff'd sub nom. Sanders v. DOJ*, No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011). The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive records may exist, but whether the search itself was adequate. *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994).

### III. ANALYSIS

#### A. Reasonableness of the Search

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An agency moving for summary judgment in a FOIA case must first demonstrate that it made a good-faith effort to search for responsive materials in a manner "reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Where an agency affidavit avers that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *See Defs. of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). An affidavit can be rebutted only when inadequate on its face or with evidence that the agency's search was not made in good faith. *See id*. A plaintiff cannot rebut the good faith presumption that attaches to an agency's affidavit "through purely speculative claims about the existence and discoverability of other documents." *Brown v. DOJ*, 742 F. Supp. 2d 126, 129

(D.D.C. 2010). Hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *See Oglesby*, 920 F.2d at 67 n.13.

DHS fails to indicate in its briefs, statement of material facts, or the declaration of Mr. Holzer how the search was conducted, and it provides no facts from which the Court could make a finding that its search was adequate. Although a search must have been conducted because documents were located and produced in part, there is insufficient information in the record for the Court to make the required finding that the search was reasonable and, therefore, DHS's motion for partial summary judgment will be denied.

### B. Objections to Withholdings from Records

In a FOIA action, a defendant must also demonstrate that any information withheld from disclosure is exempt and that the agency segregated and produced non-exempt materials. *See* 5 U.S.C. § 552(a)(4)(B), (b). An agency may satisfy this burden by providing "a relatively detailed justification through the submission of an index of documents, known as a *Vaughn* Index, sufficiently detailed affidavits or declarations, or both." *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative*, 237 F. Supp. 2d 17, 22 (D.D.C. 2002); *see also Vaughn*, 484 F.2d 820.

DHS produced 65 redacted records and withheld 2,448 records in full. DHS claims the deliberative process privilege under Exemption 5 for all withholdings and redactions. Under § 552(b)(5), an agency may protect "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." This pertains to records that would not be discoverable during litigation with the agency, *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975), including records that would be protected under the attorney-client privilege, the attorney work-product privilege, and the

executive deliberative process privilege. *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1121 (D.C. Cir. 1989).

To qualify for withholding under the deliberative process privilege, material must be both predecisional and deliberative. *See Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005). In *Petroleum Information Corp. v. Department of the Interior*, 976 F.2d 1429 (D.C. Cir. 1992), the D.C. Circuit held that:

> [a] document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made. Material is deliberative if it reflects the give-and-take of the consultative process. Our recent decisions on the deliberativeness inquiry have focused on whether disclosure of the requested material would tend to discourage candid discussion within an agency.

*Id.* at 1434 (internal quotations and citations omitted). Exemption 5 is intended to "protect[] open and frank discussion among those who make [agency decisions] within the Government." *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001). "Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

DHS relies on the deliberative process privilege to withhold or redact all the draft statistical reports related to the Security Communities program because they are intra-agency records that contain preliminary findings regarding Secure Communities and were part of an "ongoing process of revisions and deliberations between CRCL personnel and reflect the exercise in judgment by subordinate personnel as to those ideas, facts, thoughts, opinions, issues, advice, proposals, policy matters, and recommendations they believed to be relevant and worthy

8

of consideration by their superiors."[3] Holzer Decl. ¶ 38. DHS focuses its argument on the fact that no final statistical report was ever created. It contends that all the impressions, descriptions, and findings enclosed in the drafts reflect only the thoughts of the drafters and not the agency itself. *See* DHS Mot. at 11.

NIJC argues that the draft statistical reports in their entirety are not covered by Exemption 5, and that the tables with data and metrics should be produced. NIJC Mot. at 11-14. NIJC analogizes this case to *Carter v. Department of Commerce*, 307 F.3d 1084 (9th Cir. 2002), and *Assembly of the State of California v. Department of Commerce*, 968 F.2d 916 (9th Cir. 1992), in both of which the Ninth Circuit held that census data was neither predecisional nor deliberative and could, therefore, not be withheld under FOIA Exemption 5.

*1. Are the Draft Statistical Reports Predecisional?*

A document may be predecisional even if a final decision is never reached. *See Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) (citing *Petroleum Info. Corp.*, 976 F.2d at 1434). For example, agencies may evaluate their own processes and policies, but never reach a final conclusion or agency decision on an issue; the resulting memoranda are predecisional. *Sears*, 421 U.S. at 151 n.18 ("Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process."). Therefore, "as long as the document was generated as part of a definable decision-making

---

[3] DHS claims that no draft reports were located regarding PEP. Therefore, all arguments pertain only to statistical reports concerning Secure Communities.

process," even if a final decision is not made, the record may be predecisional. *Gold Anti-Trust*, 762 F. Supp. 2d at 135-36.

DHS argues that the "draft documents are predecisional because they were used to determine what information should be included in the final report." DHS Mot. at 12. DHS describes the process involved in the creation of the draft statistical reports as "a process of identifying and examining issues and developing recommendations relating to Secure Communities." *Id*. at 10. Because no reports were ever finalized, DHS also relies on the draft nature of the documents, stressing that they contain edits and revisions from lower-level employees at CRCL and were never officially ratified or accepted by an individual with decision-making authority for Secure Communities. *Id*. at 11. However, not all draft documents are predecisional and protected by the deliberative process privilege.

> While it is true that the deliberative process privilege can protect "recommendations, draft documents, proposals, and suggestions," the privilege extends *only* to those documents that qualify as *pre* decisional insofar as they were "generated before the adoption of an agency policy" and may "inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position."

*Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 60 (D.D.C. 2014) (quoting *Coastal States*, 617 F.2d at 866). To find that a document is predecisional, the court must be able "to pinpoint an agency decision or policy to which the document contributed," or was intended to contribute. *Senate of the Commonwealth of Puerto Rico v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987); s*ee also Conservation Force*, 66 F. Supp. 3d at 60-61.

The Court looks to DHS's declarations and *Vaughn* Indexes to determine the decision-making process at issue in draft reports, but DHS has failed to provide information sufficient to determine what potential agency decision was at issue. Instead, DHS merely noted for each section of the draft statistical reports that the draft reports "were part of a continuing

10

process of revisions generated in advance of the adoption of *a final DHS policy*." *See Vaughn* Index A [Dkt. 31-2] at 16 (emphasis added). DHS repeated this vague explanation as the "justification for application of" Exemption 5 for each section of the draft reports. *See id*. at 17, 19, 21, 25, 36, 40, 50, 53. A mere recitation of the standard for protection under the deliberative process privilege is not sufficient. Rather, DHS must identify what prospective "final policy" the documents predate. The Court finds that DHS has failed to establish adequately that Exemption 5 applies to the documents in *Vaughn* Index A.

DHS also omits any discussion at all of the applicability of Exemption 5 as to the records referenced in Vaughn Indexes B, C, D, and E, but instead merely notes the numerous edits contained in the documents. *See Vaughn* Index B [Dkt. 31-2] at 62-76; *Vaughn* Index C [Dkt. 31-2] at 78-80; *Vaughn* Index D [Dkt. 31-2] at 82-84; *Vaughn* Index E [Dkt. 31-2] at 86. The fact that the documents are drafts and contain edits does not, alone, qualify them for protection under the deliberative process privilege: they must be part of an articulated decision-making process. Therefore, the Court finds DHS has failed to establish adequately that Exemption 5 applies to the documents in *Vaughn* Indexes B, C, D, and E.

*2. Are the Draft Statistical Reports Deliberative?*

DHS argues that the draft statistical reports are deliberative "because they illustrate DHS's process of selecting, rejecting and analyzing data to formulate the findings published in a never realized final report." DHS Mot. at 12. The judgment used by DHS personnel to compile the draft reports is, under DHS's argument, "imbued with the decision-making of the CRCL subordinate personnel." *Id*. NIJC, however, points to multiple DHS documents describing the statistical analysis undertaken to evaluate Secure Communities and argues that the process of selecting and analyzing the data was predetermined and publically

11

disclosed. *See* NIJC Mot. at 12-13. Therefore, NIJC argues, the actual draft reports do not disclose any decision-making on behalf of CRCL personnel, but merely compile data in a predetermined manner. *See id*. NIJC analogizes the Secure Communities statistical reports to Census Bureau data, which the Ninth Circuit has held may not be withheld under Exemption 5. *See id*. (citing *Carter*, 307 F.3d 1084; *Assembly of California*, 968 F.2d 916).

DHS itself publically described the anticipated quarterly reports as involving fairly straightforward statistics "based on fingerprint submissions, alien identifications, and underlying demographic and crime data." DHS FOIA Request at 6. Multiple public memoranda from DHS explained the statistical monitoring to be carried out, indicating it would be a three-step process. The first step focused on statistical monitoring to "detect anomalous jurisdictions." *Id*. at 6. The second step used the statistics from step one to analyze and understand those anomalies. *See id*. Finally, the third step involved direct investigation into the identified anomalies using "more traditional civil rights investigation tools." *Id*. DHS also publically disclosed specific information about the metrics and calculations to be used in the first step, detailing how the data would be used to compare (1) "the fraction of a county's arrestees who are alien IDENT [DHS's Automated Biometric Identification System] matches to the fraction of the county's population that is foreign-born"; (2) "the number of IDENT-matched aliens arrested for non-aggravated felonies and misdemeanors . . . to the jurisdiction's overall rate of such arrests"; and (3) "the ratio of less-serious crimes to all arrests in the IDENT matches to the comparable ratio in general crime data." *Id*. at 9-12.

To show that a record is deliberative, an agency must demonstrate that the record was "generated as part of a definable decision-making process." *Gold Anti-Trust*, 762 F. Supp. 2d at 135-36. Such a showing typically includes: "(1) the nature of the specific deliberative

process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 189 (D.D.C. 2013) (citing *Senate of P.R.*, 823 F.2d at 585-86; *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257-58 (D.C. Cir. 1982); *Coastal States*, 617 F.2d at 867-68).

"A document that does nothing more than explain an existing policy cannot be considered deliberative." *Public Citizen, Inc. v. OMB*, 598 F.3d 865, 876 (D.C. Cir. 2010). "Only those portions of a predecisional document that reflect the give and take of the deliberative process may be withheld." *Id.*; *see also Access Reports v. DOJ*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (explaining the difference between the predecisional requirement and the deliberative requirement and noting that agencies may withhold only those portions of a predecisional document that are also deliberative). To the extent the withheld statistical reports are part of the first step in DHS's plan to conduct statistical monitoring of Secure Communities and include any or all of the metrics DHS publically indicated would be calculated, the Court finds the information contained in the reports is not deliberative. DHS publically disclosed in great detail the metrics it would use to evaluate Secure Communities; therefore, any report containing completed metrics involved no individual decision-making or judgment. *See* DHS FOIA Request at 8-14.

To the extent portions of the statistical reports proceeded further into the second step of analysis identified by DHS, and made recommendations or observations about the utility of Secure Communities, those portions of the records may properly be considered deliberative. However, DHS has not provided sufficient information in its *Vaughn* Indexes or declarations to allow the Court to conduct this analysis and differentiate between portions of the reports

containing the metrics previously identified by DHS and portions purporting to provide further analysis of those metrics. DHS's focus on the draft nature of the reports and the inclusion of edits or suggested changes misses the crucial part of the deliberative analysis. Although DHS repeatedly notes that the statistical reports are intended to be used to make a final policy decision, it does not provide the necessary detail for the Court to determine the nature of the deliberative process, function and significance of the documents, and nature of the authority vested in the author and recipient. Therefore, DHS's and NIJC's motions for partial summary judgment will both be denied with respect to the draft statistical reports.

### 3. *DHS Must Search for and Produce all Underlying Data*

NIJC also requested production of the underlying data that was collected in anticipation of preparing the statistical reports. DHS notes that the underlying data was provided (at least in part) for the draft statistical reports listed in *Vaughn* Index A, but provides no argument or explanation for why a reasonable search would not or did not locate the underlying data for all of the draft statistical reports listed in the remaining *Vaughn* Indexes. "Raw survey results and data are not summaries by individuals who culled information from a much larger universe of facts, and thus do not reflect an exercise of judgment." *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 171 (D.D.C. 2017); *see also Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011). Because data and results from requests for statistical information are factual information not protected from disclosure under Exemption 5, DHS shall conduct a reasonable search designed to locate all underlying data and produce the results to NIJC.

### C. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after redacting the exempt portions, unless the non-

exempt portions are inextricably intertwined with exempt portions. *See* 5 U.S.C. § 552(b); *see also Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (citing *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)). To demonstrate that all reasonably segregable material has been released, the agency must provide a detailed justification rather than conclusory statements. *See Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

To enable a court to perform a review of segregability, the agency must provide "not only a detailed justification of the reasons for withholding information, but also a description of the document from which the information was redacted." *Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 677 F. Supp. 2d 101, 109 (D.D.C. 2009); *see also Mead Data Cent.*, 566 F.2d at 260-61. Factual material is not automatically segregable or automatically shielded by the deliberative process privilege. The deliberative process privilege may shield factual material if it is "inextricably intertwined" with the deliberative material or if disclosure "'would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Quarles v. Dep't of the Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (quoting *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

Having already found that DHS failed to provide sufficient information to justify withholding the records under Exemption 5, the Court need not address segregability, but does so to provide guidance to DHS if it intends to submit a second partial motion for summary judgment with amended *Vaughn* Indexes and declarations. DHS argues that the charts, data, and

metrics in the draft reports are not segregable because they expose the decision-making process of the individuals developing the reports. *See* DHS Mot. at 12 ("Specifically, the factual calculations at issue here are imbued with the decision-making of the CRCL subordinate personnel from the choice of statistical modeling utilized and not utilized to the theorizing concerning possible ways to overcome weaknesses in methodologies being considered."). Facts are nonsegregable, says DHS, when the selection of which facts to include is itself deliberative. *See Montrose Chem. Corp. v. Train*, 491 F.2d 63 (D.C. Cir. 1974). Because DHS employees selected which data to highlight, that selection process would allegedly shine a light on the deliberative process. Thus, goes the argument, disclosure would dissuade candid discussion within the agency.

While DHS is correct that the act of compiling facts and selecting data to include in a summary or report may itself be deliberative and provide protection for the selected facts under Exemption 5, DHS previously determined, and shared publicly, which information and metrics would be included in the statistical reports. As discussed above, that action by DHS appears to have eliminated the decision-making of the report drafter for all portions that merely reflect the metrics previously identified by DHS. Therefore, DHS's argument that the facts are inextricably intertwined in the deliberative nature of the document and cannot be segregated is unsupported.

### IV. CONCLUSION

For the reasons discussed above, DHS's Partial Motion for Summary Judgment, Dkt. 31, will be denied and NIJC's Partial Motion for Summary Judgment, Dkt. 32, will be

16

granted in part and denied in part. DHS shall search for and produce all underlying data used in the draft statistical reports. A memorializing Order accompanies this Memorandum Opinion.

Date: January 31, 2018                                             /s/
                                                          ROSEMARY M. COLLYER
                                                          United States District Judge